COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss

DISTRICT COURT DEPT.
OF THE TRIAL COURT
DEDHAM DIVISION
DOCKET NO: 0254SU0583

|  |  |  |
|---|---|---|
| WELLESLEY HOUSING | ) |  |
| AUTHORITY | ) | FINDINGS ON ISSUE OF |
|  | ) | DEFENDANT'S COMPETENCY |
| VS. | ) | AND APPOINTMENT OF GUARDIAN |
|  | ) | AD LITEM PURSUANT TO G.L. c. 201, |
| OAK HEE RUESCH | ) | SECTION 34 |

This matter came before me on Plaintiff's complaint for Summary Process against the defendant, Oak Hee Ruesch, when Ms. Reusch filed a motion for a stay of execution after summary judgment was entered for the Plaintiff by Alch, J. on July 19, 2002. At the hearing on the Motion for Stay on October 31, 2002, I observed Ms. Reusch, who has appeared before me in the past in connection with another summary judgment action, and had serious questions about her competency. Pursuant to G.L. c. 123, Section 19, I ordered an evaluation of her competency on an outpatient basis.

Dr. Frederick W. Kelso, a designated forensic psychologist assigned to the Court Clinic at this court, provided a comprehensive evaluation of Ms. Reusch's competency in a 44 page report dated December 5, 2002. Based on that report, lobby conferences at which both counsel for Ms. Reusch and for the Wellesley Housing Authority were present and at which the Probation Department of this court participated, and based on my own observations of Ms. Reusch in court in connection with this Motion for a Stay of Execution, I find that Ms. Reusch is not competent at this time. While she appears to possess a factual understanding of the proceedings, she does not appear to possess a rational understanding of the proceedings or of the issues before the court in this eviction matter.

Accordingly, in light of the serious issues at stake and pursuant to G.L. c. 201, Section 34, I hereby appoint Kevin F. Hampe, Esquire of Dedham, MA, as guardian ad litem/next friend to represent Ms. Reusch. Attorney Stephen Matthews from the South Middlesex Legal Services continues to represent Ms. Reusch in the instant action by the Wellesley Housing Authority, which matter is stayed pending Ms. Reusch being restored to competency.

The fee for Mr. Hampe's services as guardian ad litem shall be paid by the Commonwealth of Massachusetts. Mr. Hampe is hereby chosen as he is known to this court as

an attorney who represents disabled individuals in both civil and criminal matters, his office is located in Dedham, which is important for purposes of giving Ms. Reusch access to him, and he has and remains on the list of available counsel for appointments by this court.

Further, it is ordered that Ms. Reusch must pay use and occupation charges in the amount of $118.00 per month to the Wellesley Housing Authority, and a representative payee must be obtained to handle Ms. Reusch's Social Security Disability payments and the issue of arrearages due to the Wellesley Housing Authority. This matter is set for a status hearing on February 14, 2003.

By the Court,

Lynda M. Connolly
Justice
December 6, 2002

G:\L.Oak Hee Reusch\12/06/02

# The Commonwealth of Massachusetts



# A Proclamation

### By His Excellency

## GOVERNOR MITT ROMNEY

### 2003

WHEREAS:    Multiple Chemical Sensitivity is a condition caused by exposure to toxic chemicals, and other irritants in the environment, which causes afflicted individuals to suffer such symptoms as chronic fatigue, muscle and joint pains, rashes, asthma, short-term memory loss, headaches, and other respiratory and neurological problems; and

WHEREAS:    With no known cure, Multiple Chemical Sensitivity can cause major financial, employment, housing, health, and social consequences for individuals and their families; and

WHEREAS:    Multiple Chemical Sensitivity is recognized by the Americans with Disabilities Act, the Social Security Administration, the United States Department of Housing and Urban Development, the Environmental Protection Agency, and other state and national government agencies and commissions; and

WHEREAS:    With the necessary support, understanding, accommodations, and information, individuals with Multiple Chemical Sensitivity can enjoy access to work, schooling, public facilities, and other surroundings where they can continue to contribute their skills, knowledge, and creativity; and

WHEREAS:    The week of May 11th through May 17th, 2003, is being observed as *Multiple Chemical Sensitivity Awareness Week* to raise public awareness to this debilitating disorder;

NOW, THEREFORE, I, MITT ROMNEY, Governor of the Commonwealth of Massachusetts, do hereby proclaim the week of May 11th through May 17th, 2003, to be

## MULTIPLE CHEMICAL SENSITIVITY AWARENESS WEEK IN MASSACHUSETTS

and urge all the citizens of the Commonwealth to take cognizance of this event and participate fittingly in its observance.

Given at the Executive Chamber in Boston, this eighth day of April in the year of our Lord two thousand and three, and of the Independence of the United States of America, the two hundred and twenty-seventh

*Mitt Romney*

MITT ROMNEY

By His Excellency the Governor

*William Francis Galvin*

WILLIAM F. GALVIN
Secretary of the Commonwealth



# Governor Romney Proclaims
## Multiple Chemical Sensitivity Awareness Week

Boston, Massachusetts                                                    April 29, 2003

To raise public awareness about Multiple Chemical Sensitivity (MCS), an increasingly prevalent and often debilitating illness with exposure to toxic chemicals in the environment, Governor Mitt Romney has named May 11th -17th "Multiple Chemical Sensitivity Awareness Week in Massachusetts."

Symptoms of MCS include fatigue, headache, respiratory ailments, various skin conditions, gastrointestinal problems, muscle and joint pain, memory and concentration difficulties and other neurological problems. This illness, for which there is no cure, recognizes no boundaries of age, sex, or economic circumstances.

Poor indoor air quality is a major factor in MCS. It is like a toxic chemical soup containing mold and fungus, pesticides, fragranced personal care products, cleaning agents, and other chemicals commonly found in the workplace. New chemicals are added to the soup daily. Other common triggers of MCS include carpets, paint, building materials, vehicle exhaust, office products, latex, and fabrics. People's health is at risk at work, school, and home, while shopping and in the community.

Access to work, education, healthcare and social activity is limited for people with MCS due to ubiquitous chemicals in the environment. Simple measures such as use of less-toxic cleansers and building products, adequate ventilation of indoor spaces, smoking bans, and restrictions on pesticide use can greatly improve accessibility. These measures may prevent future cases of the illness.

The Governor's proclamation says that "with the necessary support, understanding, accommodations, an information, individuals with Multiple Chemical Sensitivity can enjoy access to work, schooling, public faciliti and other surroundings where they can continue to contribute their skills, knowledge and creativity." The proclamation encourages all citizens to "take cognizance of this event and participate fittingly in its observance.

Seanna Gretchen said, "As a representative of the Massachusetts Nurses Association to the Department of Public Health, Bureau of Environmental Health Assessment, MCS Advisory Group, I am pleased that Governor Mitt Romney has issued this proclamation in support of MCS public awareness and education. Publi awareness and education on MCS promotes accurate diagnosis and effective treatment. Heightened awareness of both the general public and health care providers advances the quality of care of those enduring the long-term health effects of this potentially disabling illness. Armed with the knowledge of the causes and health impacts MCS, we can all work towards creating healthier and safer environments."

Founded in 1994, the Massachusetts Association for the Chemically Injured (MACI) provides support and information for those with chemical injuries and chemical sensitivity, and works to further public awarenes and education on the condition. MACI support groups meet regularly in the Greater Boston area and Cape Cod In other areas of the Commonwealth, MACI has a point of contact member. For more information about MAC call 978-681-5117 and visit MACI's website at http://www.angelfire.com/ma3/maci. ☺



# The Commonwealth of Massachusetts



# A Proclamation

### By Her Excellency

### GOVERNOR JANE SWIFT

#### 2002

WHEREAS:    Multiple Chemical Sensitivity is a condition caused by exposure to toxic chemicals, and other irritants in the environment, which causes afflicted individuals to suffer such symptoms as chronic fatigue, muscle and joint pains, rashes, asthma, short-term memory loss, headaches, and other respiratory and neurological problems; and

WHEREAS:    With no known cure, Multiple Chemical Sensitivity can cause major financial, employment, housing, health, and social consequences for individuals and their families; and

WHEREAS:    Multiple Chemical Sensitivity is recognized by the Americans with Disabilities Act, the Social Security Administration, the United States Department of Housing and Urban Development, the Environmental Protection Agency, and other state and national government agencies and commissions; and

WHEREAS:    With the necessary support, understanding, accommodations, and information, individuals with Multiple Chemical Sensitivity can enjoy access to work, schooling, public facilities, and other surroundings where they can continue to contribute their skills, knowledge, and creativity; and

WHEREAS:    The week of May 5th through May 11th, 2002, is being observed as *Multiple Chemical Sensitivity Awareness Week* to raise public awareness to this debilitating disorder;

NOW, THEREFORE, I, JANE SWIFT, Governor of the Commonwealth of Massachusetts, do hereby proclaim the week of May 5th through May 11th, 2002, to be

### MULTIPLE CHEMICAL SENSITIVITY AWARENESS WEEK IN MASSACHUSETTS

and urge all the citizens of the Commonwealth to take cognizance of this event and participate fittingly in its observance.

> Given at the Executive Chamber in Boston, this twenty-sixth day of March, in the year of our Lord two thousand and two, and of the Independence of the United States of America, the two hundred and twenty-sixth.

JANE SWIFT

By Her Excellency the Governor

WILLIAM F. GALVIN
Secretary of the Commonwealth

### GOD SAVE THE COMMONWEALTH OF MASSACHUSETTS



SOCIAL SECURITY ADMINISTRATION

PHYSICIAN'S MEDICAL OFFICER'S STATEMENT OF PATIENT'S CAPABILITY TO MANAGE BENEFITS

TIME IT TAKES TO COMPLETE THIS FORM
We estimate that it will take you about 5 minutes to complete this form. This includes the time it will take to read the instructions, gather the necessary facts and fill out the form. If you have comments or suggestions on this estimate, write to the Social Security Administration, ATTN: Reports Clearance Officer, 1-A-21 Operations Bldg., Baltimore, MD 21235-0001. Send only comments relating to our estimate or other aspects of this form to the office listed above. All requests for Social Security cards and other claims-related information should be sent to your local Social Security office, whose address is listed under Social Security Administration in the U.S. Government section of your telephone directory.

In replying, use this address:
SOCIAL SECURITY ADMINISTRATION

SOCIAL SECURITY ADMINIST
DISTRICT OFFICE
100 CONCORD STREET, 2ND
FRAMINGHAM, MA 01702

*Jakhee Ruesch.*

TELEPHONE NUMBER (Include Are
(508) 875-5047

DATE 7/28/03

SSA CONTACT
Ms Allen

This report is authorized by sections 205(a) and 205(j) of the Social Security Act, as amended (42 U.S.C. 405(a) and 405(j). While you are not required to respond, your cooperation will help us decide whether any Social Security benefits that may be due should be paid directly to the patient or to someone else on the patient's behalf. Your cooperation in completing and returning this statement will be appreciated.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, State, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it. Explanations about these and other reasons why information you provide us may be used or given out are available in Social Security Offices. If you want to learn more about this, contact any Social Security Office.

IDENTIFYING INFORMATION (SSA
If different from patient

NAME OF WAGE EARNER OR SEI
EMPLOYED PERSON

SOCIAL SECURITY NUMBER
_ _ _ / _ _ / _ _ _ _

PATIENT'S NAME *Jakhee Ruesch.*

PATIENT'S ADDRESS (Number and Street, City, State and ZIF

PATIENT'S SOCIAL SECURITY NUMBER
010,64,3071

PATIENT'S DATE OF BIRTH
12-17-51

## YOUR HELP IS NEEDED

The patient shown above has filed for or is receiving Social Security or Supplemental Security income pay We need you to complete the back of this form and return it to us in the enclosed envelope to help us deci we should pay this person directly or if he or she needs a representative payee to handle the funds. Pleas **Note:** This determination affects how benefits are paid and has no bearing on disability determinations. T you for your help.

## WHO IS A REPRESENTATIVE PAYEE

A representative payee is someone who manages the patient's money to make sure the patient's needs a The payee has a strong and continuing interest in the patient's well-being and is usually a family member close friend.

## WHO NEEDS A REPRESENTATIVE PAYEE

Some individuals age 18 and older who have mental or physical impairments are not capable of handling funds or directing others how to handle them to meet their basic needs, so we select a representative pay receive their payments. Examples of impairments which may cause incapability are senility, severe brain damage or chronic schizophrenia. However, even though a person may need some assistance with such as bill paying, etc., does not necessarily mean he/she cannot make decisions concerning basic needs an incapable of managing his/her own money.

## PLEASE COMPLETE THE INFORMATION ON THE REVERSE OF THIS FORM

— 508-879-4905

e you last examined the patient ____ 7/29/03

o you believe the patient is capable of managing or directing the management of benefits in his or her own best interest?

By capable we mean the patient:

- Is able to understand and act on the ordinary affairs of life, such as providing for own adequate food, housing, clothing etc., and

- Is able, in spite of physical impairments, to manage funds or direct others how to manage them

| ✓ Yes | __ No | __ Unsure |

"Yes", please omit question 3,      If "No", please provide a brief summary of the findings      If "unsure", please explain
ut be sure to sign and date the form      that led to this conclusion. Also, complete question 3

_____

_____

_____

_____

_____

_____

_____

. Do you expect the patient to be able to manage funds in the future (for example, the patient is temporarily unconscious)?

__ Yes      __ No

If yes, please explain.

_____

_____

_____

_____

**I HEREBY CERTIFY THAT THE ABOVE STATEMENTS AND ANSWERS ARE TRUE TO THE BEST OF MY KNOWLEDGE.**

NAME OF PHYSICIAN/MEDICAL OFFICER *(Please print.)*      TITLE

SUSAN    KORRICK      ASSOCIATE PHYSICIAN

ADDRESS *(Number and street, City, State, and ZIP Code)*      181 Longwood Ave. TELEPHONE NUMBER *(Include Area Code)*

CHANNING LAB/ BRIGHAM & WOMEN'S HOSP.    Boston, MA    ( 617 ) 525-2771
                                                         0415

SIGNATURE OF PHYSICIAN/MEDICAL OFFICER      DATE

Susan      7/29/03

FORM SSA-787 (7-92)

U.S. Government Printing Office: 1995 — 387-006-70044

06-06-03   14:43   From-SOum MIDDLESEX L.   SERVICES   5086202323   -761   P.02/03   F-360

Form APP
OMB No. C

SOCIAL SECURITY ADMINISTRATION                                        TOE 250

## PHYSICIAN'S/MEDICAL OFFICER'S STATEMENT OF PATIENT'S CAPABILITY TO MANAGE BENEFITS

| | In replying, use this address: |
|---|---|
| The Paperwork Reduction Act of 1995 requires us to notify you that this information collection is in accordance with the clearance requirements of section 3507 of the Paperwork Reduction Act of 1995. We may not conduct or sponsor, and you are not required to respond, to a collection of information unless it displays a valid OMB control number. TIME IT TAKES TO COMPLETE THIS FORM. We estimate that it will take you about 5 minutes to complete this form. This includes the time it will take to read the instruction, gather the necessary facts and fill out the form. If you have comments or suggestions on this estimate, write to the Social Security Administration, ATTN: Reports Clearance Officer, 1-A-21 Operations Bldg., Baltimore, MD 21235-0001. Send only comments relating to our "time it takes" estimate to the office listed above. All requests for Social Security cards and other claims-related information should be sent to your local Social Security office, whose address is listed under Social Security Administration in the U.S. Government section of your telephone directory. | SOCIAL SECURITY ADMINISTRATION |

| | |
|---|---|
| This report is authorized by sections 205(a) and 205(j) of the Social Security Act, as amended (42 U.S.C. 405(a) and 405(j)). While you are not required to respond, your cooperation will help us decide whether any Social Security benefits that may be due should be paid directly to the patient or to someone else on the patient's behalf. Your cooperation in completing and returning this statement will be appreciated. We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, State, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it. Explanations about these and other reasons why information you provide us may be used or given out are available in Social Security Offices. If you want to learn more about this, contact any Social Security Office. | TELEPHONE NUMBER (Include Area ( ) DATE SSA CONTACT IDENTIFYING INFORMATION (SSA C If different from patient NAME OF WAGE EARNER OR SELF EMPLOYED PERSON SOCIAL SECURITY NUMBER _ _ _ / _ _ / _ _ _ _ |

| PATIENT'S NAME Kirsch, Oak Hee | | PATIENT'S ADDRESS (Number and Street, City, State and ZIP |
|---|---|---|
| PATIENT'S SOCIAL SECURITY NUMBER _ _ _ / _ _ / _ _ _ _ | PATIENT'S DATE OF BIRTH 12/17/51 | |

## YOUR HELP IS NEEDED

The patient shown above has filed for or is receiving Social Security or Supplemental Security income pay We need you to complete the back of this form and return it to us in the enclosed envelope to help us deci we should pay this person directly or if he or she needs a representative payee to handle the funds. Pleas

**Note:** This determination affects how benefits are paid and has no bearing on disability determinations. T you for your help.

## WHO IS A REPRESENTATIVE PAYEE

A representative payee is someone who manages the patient's money to make sure the patient's needs a The payee has a strong and continuing interest in the patient's well-being and is usually a family member close friend.

## WHO NEEDS A REPRESENTATIVE PAYEE

Some individuals age 18 and older who have mental or physical impairments are not capable of handling funds or directing others how to handle them to meet their basic needs, so we select a representative pa receive their payments. Examples of impairments which may cause incapability are senility, severe brain damage or chronic schizophrenia. However, even though a person may need some assistance with such as bill paying, etc., does not necessarily mean he/she cannot make decisions concerning basic needs ar incapable of managing his/her own money.    Exhibit H

PLEASE COMPLETE THE INFORMATION ON THE REVERSE OF THIS FORM

-06-03    14:43    From-SOUTH MIDDLESEX L    SERVICES    5086202323    -761    P.03/03    F-360

1. Date you last examined the patient _March 11, 2003_

2. Do you believe the patient is capable of managing or directing the management of benefits in his or her own best interest?

By capable we mean the patient:

- Is able to understand and act on the ordinary affairs of life, such as providing for own adequate food, housing, clothing, etc., and

- Is able, in spite of physical impairments, to manage funds or direct others how to manage them.

☒ Yes    ☐ No    ☐ Unsure

If "Yes", please omit question 3, but be sure to sign and date the form.

If "No", please provide a brief summary of the findings that led to this conclusion. Also, complete question 3.

If "unsure", please explain.

_Based upon the information I have, it is my opinion that Ms. Ruesch is able to manage the basic affairs of her daily living_

3. Do you expect the patient to be able to manage funds in the future (for example, the patient is temporarily unconscious)?

☒ Yes    ☐ No

If yes, please explain. _I have no reason to believe Ms. Ruesch's condition will change to the point that she will not be able to manage her affairs and funds._

I HEREBY CERTIFY THAT THE ABOVE STATEMENTS AND ANSWERS ARE TRUE TO THE BEST OF MY KNOWLEDGE.

NAME OF PHYSICIAN/MEDICAL OFFICER (Please print.)
_L. Christine Oliver M.C._

TITLE
_Associate Physician - MGH_

ADDRESS (Number and street, City, State, and ZIP Code)
_Massachusetts General Hospital. Boston_

TELEPHONE NUMBER (Include Area Code)
_(617) 726-1721_

## HOUSING DISCRIMINATION COMPLAINT

2002 DEC 23  A 10: 40

CASE NUMBER:  01-03-0087-8

1.   Complainants

     Oak - Hee Ruesch
     315 Weston Rd #A3
     Wellesley, MA  02482

2.   Other Aggrieved Persons

     None.

3.   The following is alleged to have occurred or is about to occur:

     Discriminatory terms, conditions, privileges, or services and
     facilities.
     Failure to permit reasonable modification.
     Failure to make reasonable accommodation.

4.   The alleged violation occurred because of:

     Handicap.

5.   Address and location of the property in question (or if no
     property is involved, the city and state where the discrimination
     occurred):

     315 Weston Rd
     #A3
     Wellesley, MA  02482

6.   Respondent(s)

     Wellesley Housing Authority
     109 Barton Rd
     Wellesley Hills, MA  02481

     Louis M. Malerba
     Wellesley Housing Authority
     109 Barton Rd.
     Wellesley, MA  02481

7.   The following is a brief and concise statement of the facts
     regarding the alleged violation:

Exibit 42

I believe that I have been discriminated against by the Wellesley Housing Authority on the basis of my disability. I have a severe chemical sensitivity condition that I have received medical treatment for a nurilber of years. I asked Respondent to take my carpet out as a reasonable accommodation. but I was told that it was too expensive. I then asked for less expensive alternatives, such as air purifiers, humidifiers, etc. Respondent refused to make any accommodation. I also asked them to make an adjustment to my rent because of the medical expenses associated with my disability. Respondent refused to adjust my rent.

8. The most recent date on which the alleged discrimination occurred:

December 10, 2002.

9. Types of Federal Funds identified:

Public and Indian Housing.

10. The acts alleged in this complaint, if proven, may constitute a violation of the following:

Sections 804b or f, 804f3A and 804f3B of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

Section 504 of the 1973 Rehabilitation Act.
The Americans with Disabilities Act of 1990.

Please sign and date this form:

I declare under penalty of perjury that I have read this complaint (including any attachments) and that it is true and correct.

_Oak - Hee Ruesch_                                    12/23/02
Oak - Hee Ruesch                              (Date)

N O T E : HUD WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR ORGANIZATION AGAINST WHOM IT IS FILED.



U.S. Department Of Housing and Urban Development
Office of Fair Housing and Equal Opportunity
Thomas P. O'Neill, Jr. Federal Building
10 Causeway Street
Boston, Massachusetts  02222-1092

December 17, 2002

Oak · Hee Ruesch
315 Weston Rd #A3
Wellesley, MA 02482

Dear Complainant:

Subject:  Housing Discrimination Complaint
          Ruesch v. Wellesley Housing Authority
          Inquiry No.  147242
          HUD Case No. 01-03-0087-8

     The subject housing discrimination complaint was filed on 12/10/02 pursuant to
the Fair Housing Act (the Act), 42 U.S.C. 3600-3620 and has been accepted for
processing.  Enclosed is a copy of the complaint.  Please retain it for your records.
All correspondence and information requests about this complaint must reference the
complaint number.

     While this complaint is pending, you will have the opportunity to resolve it
through conciliation or settlement.

     In addition to the administrative complaint process, the complainant may,
pursuant to Section 813 of the Act, commence a civil action in an appropriate Federal
district or state court, as long as an Administrative Law Judge has not begun a
hearing on this matter.  Such civil action must be commenced no later than two years
after the occurrence or termination of an alleged discriminatory housing practice,
irrespective of whether a complaint has been filed with this Department.  The two
year period does not include the time the complaint is pending before this
Department.  However, once a trial begins, the Department will cease its
administrative processing of the complaint.

     Pursuant to Section 810(f) of the Act, this complaint will be processed by:

          MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
          VICTOR POSADA, FAIR HOUSING COORDINATOR
          ONE ASHBURTON PLACE
          BOSTON, MA 02108
          (617)727-3990

     During the administrative processing of this complaint, you are responsible for
keeping this agency informed of any change in address.  Failure to do so may be
viewed as failure to cooperate in the investigation.

Unless otherwise notified, the aforementioned agency will be responsible for all processing action on this complaint. Therefore, all correspondence or inquiries regarding this matter should be directed to that agency.

Section 504 Case Number: 01-03-0025-4
ADA Case Number:   01-03-0013-D

The respondent organization is a recipient of Federal financial assistance, and the complaint has been accepted and will be investigated under Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794] as amended.  The Act states:

> No otherwise qualified individual with handicap in the United States...shall solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

The Respondent is public entity as defined by Section 201 of the Americans with Disabilities Act (ADA) [42 U.S.C. 12115].  The complaint has been accepted and will be investigated under Title II of the ADA [42 U.S.C. 12132], which states:

> Subject to the provisions of this title, no qualified individual with disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

There may be other applicable federal, state or local statutes under which the parties may initiate Court action.  You may consult a private Attorney in this regard.

The law also requires us to notify you that section 818 of the Fair Housing Act makes it unlawful for a Respondent or anyone else to coerce, intimidate, threaten or interfere, with you in your exercise or enjoyment of, any right granted or protected under the Federal Fair Housing Law.  The law also makes it illegal for anyone to coerce, threaten or interfere with you for your having aided or encouraged any other person in the exercise or enjoyment of, any right or protection granted to them under the Federal Fair Housing Law.

Please be advised that retaliation against any person for participation in the enforcement of the Act is a discriminatory housing practice prohibited under Section 818 of the Act.

Your cooperation in this matter is appreciated.

Sincerely,

Timothy M. Robison, Chief
Intake/ Assessment Branch
Office of Fair Housing and
Equal Opportunity

Enclosures



## Brigham Medical
### S P E C I A L T I E S

45 Francis Street    Boston, MA  02115
617-732-5771

May 8, 2001

Re:    Oak-Hee Ruesch
       315 Western Road, #A3
       Wellesley, MA 02482

To whom it may concern:

I am writing on behalf of my patient, Ms. Oak-Hee Ruesch.  Ms. Ruesch has an illness that has caused her to have extreme environmental intolerances and sensitivities and therefore this illness is a source of substantial impairment for her.  She needs the following accommodations in her housing because of her health impairment: (1) no carpeted surfaces in her apartment (removal of existing carpeting, if necessary), (2) good ventilation in her apartment such as is possible with at least two operable windows positioned in each room for cross ventilation, (3) no heating with forced hot air (radiant heat is a healthier option for her), (4) limit, if not eliminate, pollution sources such as would be present with proximity to heavily trafficked roadways, gas stations, or manufacturing facilities; that is, she should be located in a residential area that is removed from busy roads, and (5) weather stripping on windows and doors to limit exposure to chemical products from neighbors.

In addition, Ms. Ruesch has special dietary needs because of her illness.  Specifically, her health problems  require her to consume organically grown foods and to use personal care products without synthetic chemical additives.  To accommodate this, she needs to live within walking distance of stores where organically grown foods and appropriate personal care products are sold (she does not have a car).

I appreciate your consideration of this request.

Sincerely,

Susan Korrick, MD, MPH
Associate Physician
Occupational and Environmental Medicine Clinic

2 60???



Brigham Medical
S P E C I A L T I E S

45 Francis Street    Boston, MA  02115
617-732-5771

June 4, 2002

Re:    Oak-Hee Ruesch
       315 Western Road, #A3
       Wellesley, MA 02482
       MR# 099-76-54-9

To The Wellesley Housing Authority:

I am writing on behalf of my patient, Ms. Oak-Hee Ruesch. Ms. Ruesch has Multiple Chemical Sensitivities (a.k.a. Idiopathic Environmental Intolerance). Although the etiology of this complex illness is poorly understood, it is a well-described disorder the diagnosis of which is based on clinical criteria. As a consequence of this illness, Ms. Ruesch has extreme intolerance to a wide range of common products, foods, and indoor environments. She experiences significant physical and emotional impairment when exposed to many household cleaning products, clothing material, and personal care products, when ingesting certain foods, and when exposed to common environmental contaminants such as automobile exhaust, fumes, dust, or odors. As a consequence of this disorder, Ms. Ruesch is significantly impaired and totally disabled.

There is no known treatment for this disorder excepting avoidance of environments and products that precipitate symptoms. Therefore, to accommodate Ms. Ruesch's disability, she requires special housing, dietary, and lifestyle modifications such as the use of organically grown foods, personal care products without synthetic chemical additives, and clothing/bedding without synthetic materials. To reasonably control her living environment to accommodate her disability, Ms. Ruesch's expenses amount to approximately $800/month. As a consequence, rent adjustment is medically necessary to accommodate her disability.

Please let me know if you need additional information to honor this request. I thank you in advance for your attention to this matter.

Sincerely,

Susan Korrick, MD, MPH
Associate Physician
Occupational-Environmental Medicine Clinic

Exhibit 4



**MASSACHUSETTS GENERAL HOSPITAL**

1101 Beacon Street
Four West
Brookline, Massachusetts 02446
Tel: 617.232.1704, Fax: 617.232.3280

May 22, 2003

Kevin F. Hampe, Esq.
Law Offices of Winbourne, Hampe & Sheehan
411 Washington Street
Dedham, MA  02026

RE: Oak Hee Ruesch – DOB 12/17/51

Dear Mr. Hampe:

I am writing in follow-up to our telephone conversation and your letter regarding Ms. Ruesch. As you know, and as we discussed, on April 1, 2003 at Ms. Ruesch's request I completed a form from South Middlesex Legal Services. Unfortunately, my opinion at that time was based upon insufficient information – information not available to me then.

My stated opinion on April 1 was that Ms. Ruesch is able to manage the basic affairs of her daily living. As I have subsequently learned, on the basis of a psychiatric evaluation by Dr. Fred Kelso the Dedham District Court declared Ms. Ruesch incapable of managing her affairs and appointed a representative payee for her. I am not a psychiatrist. Accordingly, I will defer to Dr. Kelso's evaluation and opinion and retract my prior physician statement of April 1.

I am sorry for any trouble my statement may have caused the Court and Ms. Ruesch. If there are further questions, please let me know.

Very truly yours,

L. Christine Oliver, MD



MASSACHUSETTS
GENERAL HOSPITAL

Pulmonary and Critical Care Unit
55 Fruit Street, Bulfinch 148
Boston, Massachusetts 02114-2696
Tel: 617.726.1721, Fax: 617.724.9948

March 11, 2003

To whom it may concern:

My patient Oak Hee Kwock has allergies to dust and dust mites, and multiple chemical sensitivities that impair his ability to function. Accordingly she needs special accommodations regarding use of laundry facilities and should be allowed purchased boxes etc to avoid exposure.

I have also prescribed a Miele vacuum cleaner with HEPA filter and an Allen Air Purifier 5000 with HEPA and carbon filters.

Thank you for your attention to his special needs.

Very truly yours

L. Christin Olivier

(617) 726-1721



**MASSACHUSETTS GENERAL HOSPITAL**

Boston, Massachusetts 02114-2696
MGH Mail Address:

April 24, 2001

To whom it may concern:

I am writing with regard to Ms. Oak Hee Ruesch, DOB 12/17/51. She is a patient of mine at the MGH and I am following her for chemical sensitivity. She is presently in public housing on Rt 2 in Wellesley.

Contamination of air in her apartment by vehicular exhaust fumes and other toxins in this trafficked part of Wellesley is exacerbating her illness & hindering recovery.

The prescribed Air Filter Window Fan will significantly improve the quality of the air in her apartment and [is] needed for her clinical [improvement].

Thank you
L. Christine Oliver

PARTNERS

A Teaching Affiliate of Harvard Medical School

MGH
1811

Massachusetts General Hospital
Boston, MA 02114
CHRISTINE OLIVER, M.D.
PULMONARY AND CRITICAL CARE UNIT
617-726-1721

No.

Patient's Name: Oahe Kuench    Age: 4a    Date: 04/24/01

Address: 7 Cedar St
Wellesly Hills, MA

Rx    Air Filtration System

#3    # 420-1234

ONE ORDER PER PRESCRIPTION BLANK

Refill 0 Times    DEA Number 1603093502    Signature C Oliver    M.D.

INTERCHANGE IS MANDATED UNLESS
THE PRACTITIONER WRITES THE WORDS
"NO SUBSTITUTION" IN THIS SPACE    PRINT Name C Oliver    M.D.

# South Middlesex Legal Services, Inc.

354 Waverly Street • Framingham • MA 01702 • 508-620-1830 (TDD) • 800-696-1501 • FAX 508-620-2323

July 5, 2001

*By Hand*

Louis Mallerba, Jr.
Executive Director
Wellesley Housing Authority
109 Barton Road
Wellesley, MA 02481

Dear Mr. Mallerba:

Enclosed are copies of the receipts submitted to me by Ms. Reusch. The ones bound by the rubber band are for the period since the inception of her tenancy with the Wellesley Housing Authority. The others are for previous periods and are submitted for the purpose of demonstrating that Ms. Reusch's current expenses are fairly consistent with those from prior to her tenancy. As we discussed, Ms. Reusch is requesting that you use the receipts to recalculate her share of the monthly rent retroactively, allowing for medical expense deductions from her income consistent with the March 1, 2001 letter from Dr. Castells (copy attached).

I will be on vacation until July 17th. Please contact me as soon as possible beyond that date so that we can proceed with negotiations in the Summary Process, now rescheduled for trial on July 26th. Thank you for your ongoing cooperation in connection with this matter.

Very truly yours,

Robert L. Bowens
Staff Attorney

Enclosure

cc:    Oak-hee Reusch

Exhibit 5



BRIGHAM AND
WOMEN'S HOSPITAL

850 Boylston Street, Suite 540
Chestnut Hill, Massachusetts 02467
Tel: 617-278-0300, Fax: 617-731-2748

Allergy Department

Patient: RUESCH,OAKHEE   MRN: 09976549(BWH)
Author: Castells, Maria Concepcion, M.D.

Status: Preliminary
Visit Date:03/01/2001

To Whom It May Concern:

Our patient, Ms. Oakhee Ruesch, is seen here in the Allergy and Clinical Immunology Division at the Brigham and Women's Hospital.

The patient has been diagnosed with multiple chemical disorder. She also has contact dermatitis as well as perennial allergic rhinitis and conjunctivitis. The patient, at this point, has a minimal amount of expenses for food and others to include $382.50, and her source of organic foods amounts to $460.00. A detailed budget is attached to this letter. This amounts to a total of $800.00 which the patient must spend monthly. In addition to that, the patient needs to spend another $10,000 for reasonable control of her living environmental during the year. Her expenses, to a certain extent, are unpredictable and she sometimes has the need to buy expensive items because her sensitivities preclude her from using cheaper items.

The patient has been evaluated by multiple doctors here in this Division as well as in other hospitals, and all have attested to her diagnosis of multiple chemical sensitivity disorder. In fact, the patient is functionally disabled and there is only one widely known study in her disease written by Dr. Nicholas Ashford and Claudia Miller on chemical exposure indicating that the disease is poorly understood and that the patients suffer emotional and physical stress when exposed to environmental chemicals that are perceived as difficult and hostile. The authors of the book substantiate that the multiple chemical sensitivity syndrome has an organic basis and it can also manifest severe posttraumatic stress syndrome, and the patients have inability to function in the current world unless they are able to buy substances and foods that they do not react to.

Ms. Oakhee Ruesch has been able to identify foods and items that do not give her reactions, and again, those are included in the list of her expenses on a monthly basis. We feel Ms. Ruesch would be unable to function otherwise and it is impossible for her to make any increased payments at this point since her income is limited.

Ruesch, Oakhee
MR# 09976549
March 1, 2001
Page Two

Please let me know if there is any further information that you need.

Sincerely yours,

Mariana Castells, M.D.
/lm

UNITED STATES OF AMERICA
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
OFFICE OF ADMINISTRATIVE LAW JUDGES

The Secretary, United States        )
Department of Housing and Urban     )
Development, on behalf of           )
Amy Covington Arkoff,               )
                                    )
                Charging Party,     )
                                    )
        v.                          )          HUDALJ 09-91-1195-1
                                    )
Association of Apartment Owners of  )
Dominis West, Certified Management  )
Company, Clay Reid, and Brian Scanlan, )
                                    )
                Respondents.        )
_____)

DETERMINATION OF REASONABLE CAUSE AND
CHARGE OF DISCRIMINATION

I.    JURISDICTION

     Amy Covington Arkoff, aggrieved person, filed with the
Department of Housing and Urban Development ("HUD") a verified
complaint on or about November 30, 1990, alleging that
Respondents Certified Management Company, Brian Scanlan, and Clay
Reid, discriminated against her on the basis of handicap in
violation of the Fair Housing Act ("Act"). 42 U.S.C. §§ 3601-19.
On September 11, 1991, the complaint was amended to add the
Association of Apartment Owners of Dominis West as a Respondent.

     Paragraphs 810(g)(1) and (2) of the Act authorize the
issuance of a charge of discrimination on behalf of an aggrieved
person following an investigation and determination that
reasonable cause exists to believe that a discriminatory housing
practice has occurred. 42 U.S.C. §§ 3610(g)(1) and (2). The
Secretary has specifically delegated to the General Counsel the
authority to issue such a charge. 54 Fed. Reg. 13,122 (Mar. 30,
1989).

     The General Counsel has determined that reasonable cause
exists to believe that the Respondents, in violation of section

804 of the Act, discriminated against Amy Covington Arkoff and
therefore has authorized the issuance of this charge of
discrimination.[1]

II. SUMMARY OF THE ALLEGATIONS IN SUPPORT OF THIS CHARGE

Based upon HUD's investigation of this complaint, and the
following allegations, the Secretary has reasonable cause to
believe that the Respondents discriminated against Amy Covington
Arkoff on the basis of her handicap, in violation of paragraph
804(f)(2) of the Act, and that Respondent Association of
Apartment Owners of Dominis West made a statement with respect to
rental of a dwelling based on handicap, in violation of
subsection 804(c) of the Act. The allegations that support this
charge of discrimination are:

1. It is unlawful to make or publish, or cause to be made
or published, any notice or statement, with respect to the rental
of a dwelling that indicates any preference, limitation, or
discrimination based on handicap, or an intention to make any
such preference, limitation, or discrimination. 42 U.S.C.
§ 3604(c); 24 C.F.R. §§ 100.50(b)(4) and 100.75(a) (1991). These
prohibitions extend to all statements by a person engaged in the
rental of a dwelling. 24 C.F.R. § 100.75(b) (1991). Prohibited
practices include using words or phrases that convey to renters
that dwellings are available or are not available to particular
persons because of handicap and expressing to any person a
preference for or limitation on any renter because of handicap.
24 C.F.R. §§ 100.75(c)(1) and (2) (1991).

2. It is unlawful to discriminate against any person in the
terms, conditions, or privileges of rental of a dwelling, or in
the provision of services or facilities in connection therewith,
because of handicap. 42 U.S.C. § 3604(f)(2); 24 C.F.R.
§§ 100.60(a) and 100.202(b) (1991).

3. For the purposes of 42 U.S.C. § 3604(f), see paragraph
2, supra, discrimination includes a refusal to make reasonable
accommodations in rules, policies, practices, or services, when
such accommodations may be necessary to afford a handicapped
person equal opportunity to use and enjoy a dwelling. 42 U.S.C.
§ 3604(f)(3)(B); 24 C.F.R. § 100.204(a) (1991).

5. Complainant, Amy Covington Arkoff, has an environmental
illness, a handicap under the Act. 42 U.S.C. § 3602(h); 24

---

[1] A separate Determination of No Reasonable Cause with
respect to the Complainant's allegation of a violation of section
818 of the Act by Respondent Scanlan is being issued concurrently
with this determination.

C.F.R. § 100.20 (1991)

6. Dominis West is a condominium complex consisting of 113 condominium units located at 1419 Dominis West, Honolulu, Hawaii. Each Dominis West unit is a dwelling. 42 U.S.C. § 3602(b); 24 C.F.R. § 100.20 (1991).

7. Complainant's parents own unit # 1505 at the Dominis West complex ("subject dwelling"). In or about October 1989, Complainant moved into the subject dwelling. Complainant is an aggrieved person. 42 U.S.C. § 3602(i); 24 C.F.R. § 100.20 (1991).

8. Respondent Association of Apartment Owners of Dominis West ("Association") is the homeowners association of the Dominis West complex. Marjorie Bowes is the Vice President of the Board of Directors of the Association.

9. Respondent Certified Management Company ("CMC") was hired by Respondent Association to manage the Dominis West complex. Respondent Clay Reid, Property Manager, and Respondent Brian Scanlan, Resident Manager were CMC employees with the responsibility for managing the Dominis West complex.

10. Several months after Complainant moved into the subject dwelling, Complainant discovered that the chemical products Respondents were using for cleaning the Dominis West complex and for other purposes were making her ill and denying her equal opportunity to use and enjoy the subject dwelling. Complainant orally notified Respondent Scanlan. Respondents took no action to accommodate the Complainant's handicap.

11. In or about April or May 1990, Complainant again orally notified Respondent Scanlan that the chemical products Respondents were using for cleaning and other purposes were making her ill and denying her equal opportunity to use and enjoy the subject dwelling. Again, Respondents took no action to accommodate the Complainant's handicap.

12. On or about May 26, 1990, Complainant sent a letter to the Respondents requesting them to change the products that they were using that made her ill and denying her equal opportunity to use and enjoy the subject dwelling. In her letter she listed several products that Respondents might use.

13. On or about June 1, 1990, Respondent Reid, on behalf of Respondent CMC, responded by letter to Complainant's letter and assured her that Respondent Scanlan would use environmentally safe cleaning materials. Respondent Scanlan tried other chemicals (e.g., Sundance, an ABC Corporation cleaning product that was not on Complainant's list), but they continued to adversely affect Complainant.

14.  On or about August 6, 1990, Complainant sent another letter to the Respondents to notify them that she was experiencing health problems that she believed were due to Respondents' use of Sundance cleaner in the public areas of the complex.

15.  On or about August 13, 1990, Respondent Reid, on behalf of CMC, responded by letter to Complainant's letter.  Respondent Reid informed Complainant that Respondent Association had disposed of the previous cleaning materials, such as Sundance, and was currently using other ABC Corporation products.  None of the products Respondents used were on Complainant's list.

16.  Sometime thereafter Complainant orally informed Respondent Scanlan that the products Respondents were using were making her ill.  Respondents took no further action at that time to reasonably accommodate Complainant's handicap.

17.  On November 30, 1990, Complainant filed a complaint with HUD alleging that Respondents discriminated against her on the basis of handicap.

18.  In or about early February 1991, Complainant met with Respondent Scanlan and Respondent CMC's Property Manager Bob Christiansen and informed them that the cleaning products that Respondents[2] were using still adversely affected her.  Mr. Christiansen agreed to use some of the products Complainant had previously suggested.

19.  Sometime thereafter, Respondent Scanlan stopped using the products Mr. Christiansen had told Complainant that Respondents would use.  Scanlan did so on the stated ground that other tenants complained that these products were ineffective.  Respondents thereafter did not use any other products that the Complainant suggested would be non-toxic to her.

20.  It would not have been unduly burdensome for Respondents to have used or attempted to use other products that would have been non-toxic to the Complainant.

21.  On or about February 13, 1991, Complainant phoned Marjorie Bowes, Vice President of the Respondent Association's Board.  Complainant asked for her assistance in getting the Respondents to do something about the products Respondents were using, because they were detrimental to her health.  Ms. Bowes, in her capacity as an officer of Respondent Association,

---

[2]As used in paragraphs 18-19, the term Respondents does not include Respondent Reid, who by that time had left Respondent CMS's employ.

5

suggested that because of her handicap, environmental illness, the Complainant should move.

22. Ms. Bowes' statement to Complainant with respect to the rental of the subject dwelling indicated a preference, limitation, or discrimination by Respondent Association based on handicap, in violation of subsection 804(c) of the Act. 42 U.S.C. § 3604(c); 24 C.F.R. §§ 100.50(b)(4) and 100.75(a) & (c)(1) and (2) (1991).

23. Respondents' refusal to make reasonable accommodations for Complainant by using or attempting to use chemical products that would not adversely affect her discriminated against her in the terms, conditions, or privileges of rental of a dwelling, and in the provision of services and facilities in connection therewith, because of her handicap, because such accommodations were necessary to afford her equal opportunity to use and enjoy her dwelling. 42 U.S.C. § 3604(f)(2); 24 C.F.R. § 100.202(b) (1991). See 42 U.S.C. § 3604 (f)(3)(B); 24 C.F.R. § 100.204(a) (1991).

24. As a result of Respondents' actions, Complainant has suffered damages, including economic loss, inconvenience, and emotional distress.

III. FINAL INVESTIGATIVE REPORT

The information which supports the determination that reasonable cause exists to believe that discriminatory housing practices have occurred, and which serves as the basis for this charge of discrimination, is contained in the Final Investigative Report ("FIR") completed for this case. A copy of the FIR will be provided to any aggrieved person and to any Respondent upon written request to Lavera Gillespie, Director, Office of Fair Housing and Equal Opportunity, San Francisco Regional Office, Region IX, 450 Golden Gate Avenue, San Francisco, California 94102-3448.

IV. CONCLUSION

WHEREFORE, the Secretary of Housing and Urban Development, through the Office of the General Counsel and pursuant to subparagraph 810(g)(2)(A) of the Act, charges the Respondents with engaging in discriminatory housing practices in violation of subsections 804(c) and paragraph 804(f)(2) of the Act and prays that an order be issued that:

1. Declares that the Respondents' discriminatory housing practices, as set forth above, violate the Act, 42 U.S.C. §§ 3601-19.

6

2.  Pursuant to paragraph 812(g)(3) of the Act, 42 U.S.C.
§ 3612(g)(3), enjoins the Respondents, their agents, employees,
and successors, and all other persons in active concert or
participation with them from discriminating against any person
based on handicap in any aspect of the rental of a dwelling;

3. Pursuant to paragraph 812(g)(3) of the Act, 42 U.S.C.
§ 3612(g)(3), awards such damages as will fully compensate Amy
Covington Arkoff for her economic loss, inconvenience, and
emotional distress, caused by Respondents' discriminatory
conduct; and

4.  Pursuant to paragraph 812(g)(3) of the Act, 42 U.S.C.
§ 3612(g)(3), assesses a civil penalty against each of the
Respondents.

5.  The Secretary further prays for such additional relief
as may be appropriate.

Respectfully submitted,

CAROLE W. WILSON
Associate General Counsel
   for Equal Opportunity and
   Administrative Law

HARRY L. CAREY
Assistant General Counsel
   for Fair Housing

JONATHAN STRONG
Deputy Assistant General Counsel
   for Fair Housing Litigation

ANTOINETTE BARKSDALE
Trial Attorney
Office of General Counsel
Fair Housing Division

*This is One of many court cases filed because of M.C.S.*

*It is similar to your plight.*

*Edwina*



U.S. Department of Housing and Urban Development
Office of Fair Housing and Equal Opportunity

1990

# The State of Fair Housing

Report to the Congress
Pursuant to Section
808(e)(2) of the Fair
Housing Act



U.S. Department of Housing and Urban Development
Washington, D.C. 20410-1000

OCT 26 1990

Honorable Frank R. Lautenberg
United States Senate
Washington, D.C.  20510-3002

Dear Senator Lautenberg:

Thank you for your letter of October 11, 1990 regarding your constituent, Mary Lamielle, and her request that the Department of Housing and Urban Development (HUD) prepare a written policy acknowledging those people who are chemically sensitive as a disabled population deserving reasonable accommodation with regard to exposure to chemicals.

HUD presently recognizes Multiple Chemical Sensitivity (MCS) as a disability entitling those with chemical sensitivities to reasonable accommodation under Section 504 of the Rehabilitation Act of 1973.  People with MCS are also recognized as disabled under Title VIII of the Fair Housing Amendments Act of 1988. However, because of the unique nature of MCS and the limitless variety of chemical sensitivities possible, HUD has not written a policy that sets forth specific required reasonable accommodation for this disability.  Instead, we have acknowledged chemical sensitivity as a disability and accommodated those with various hypersensitivities on a case-by-case basis.  As with all disabilities, housing providers are required to provide reasonable accommodations to chemically sensitive individuals, unless those accommodations would cause an undue financial and administrative burden or would result in a fundamental alteration in the nature of the program or activity.

Information about MCS has been disseminated at recent HUD Section 504 Town Meetings in an effort to make housing providers more aware of the needs of those with this disability.  To better assure that HUD staff and the public are aware of the need to treat this condition as a disability, HUD is also planning to issue formal guidance on this matter to its Regional and Field Offices.

HUD welcomes any information that the National Center for Environmental Health Strategies can provide and will keep Ms. Lamielle informed as new guidance is issued.

I hope that this information has been helpful.

Very sincerely yours,

Timothy L. Coyle
Assistant Secretary

Dear

Pursuant to the Americans with Disabilities Act (ADA) I recommend that you adopt a policy to accommodate employees and members of the public disabled by chemical barriers.

Such a policy would address the needs of those with chemically induced or exacerbated illnesses including but not limited to people with chemical sensitivity disorders, sick building syndrome and multiple chemical sensitivity; those with breathing and lung disorders, asthma, and neurological impairments.

I recommend that you embrace these disabled populations by eliminating the chemical and environmental barriers that impede access to the buildings, facilities, and properties owned, maintained, or operated by you.

A policy to accommodate those disabled by chemical barriers should, at minimum, include the items listed below. Such a policy would enhance the health and productivity of all building occupants. Many of these recommendations can be accomplished at minimal expense to the building owner. Therefore, most or all recommendations are likely to meet the test of reasonableness under ADA.

* Provide adequate ventilation by implementing building ventilation in accordance with current recommendations of the American Society of Heating, Refrigerating and Air-Conditioning Engineers (ASHRAE 62-1989) as a minimum standard; by providing adequate localized exhaust for significant indoor pollutants such as office copy machines; and by maintaining the HVAC system to prevent the accumulation of dirt and moisture that promotes mold growth. (Note that variable air volume systems have not been demonstrated to provide as much fresh air as claimed.)

* Ensure that there are no pollution sources (such as idling trucks, buses, or other vehicles; exhaust from parking garages; stagnant water from air conditioner cooling towers; pesticides or other chemical or biological contaminants) in the vicinity of fresh air intakes.

* Eliminate the use of air fresheners, deodorizers, potpourri, or disinfectants, including the use and dispersion of these or similar products such as fragrances through the building's ventilation system, or through dispersion by individual automatic dispensers. (U.S. EPA indoor air research has found that rooms with air fresheners are contaminated with paradichlorobenzene, one of the top six indoor air pollutants and the active pesticide ingredient in mothballs. Disinfectants are also pesticides that pollute indoor air. They should not be a substitute for good construction or maintenance practices.)

* Halt the use of pesticides prophylactically in buildings and facilities owned, operated, or maintained by you. Adopt an integrated pest management policy that encourages the use of least toxic chemicals. Require employee and public prenotification and posting at building entrances and at designated areas within the building or facility in the event that pesticides are used in an emergency situation.

* Halt the use of synthetic lawn care pesticides on lawns, parks, rights of way, and other areas owned, maintained, or operated by you. In the event that any pesticide product is used in an emergency situation, require the choice of the least

toxic treatment with prenotification and posting for employees, the public, neighboring property owners, and the community.

  * Prohibit smoking in buildings and facilities and at building entrances.

  * Encourage elimination or minimization in the use of fragrances/fragranced products by employees and other building occupants to promote the health of coworkers and to ensure public access to those disabled by chemical barriers. A similar policy should be established for public meetings.

  * Institute a full review of product selection criteria. Require the selection and use of least toxic/allergenic, nonfragranced cleaning products.

  * Institute a full review of building materials, office furnishings, equipment, and supplies with particular attention to product content and emissions levels. Require the purchase of the least toxic/allergenic products in these categories.

  * Require employee prenotification through a registry available to all building occupants and building posting at the entrance(s) for construction and remodeling activities and toxic cleaning activities such as the use of paints, adhesives, and solvents; carpet shampoos and floor waxes.

  * Permit the use of windows as needed in existing buildings. Where feasible, repair or retrofit existing windows so that they can open. Plan for windows that open in new construction.

  * Educate employees and the public to the reality of chemical barriers through notices and any applicable newsletters and other publications. Educational efforts will help avert stigma, harassment, and discrimination toward disabled coworkers and the public. Setting a positive example is the best way to educate employees.

  * Adopt an alternative workspace policy for employees disabled by indoor contaminants on a temporary or permanent basis. Such a policy should include the option to work in a different area, or work at times when fewer coworkers are present, or during hours when ventilation is at its peak, for example. It should include the option to work at home. (The U.S. EPA headquarters in Washington, DC has an alternative workspace [AWS] policy.)

  These recommendations are endorsed by the National Center for Environmental Health Strategies (NCEHS), a national non-profit, tax-exempt organization that focuses on creative solutions to public health problems. The Center is a clearinghouse on chemical sensitivity disorders and related illnesses, and has acted as a source of information and comments on federal indoor air policies and regulations implementing the Americans with Disabilities Act. You may, of course, contact the Center by writing NCEHS, 1100 Rural Avenue, Voorhees, New Jersey 08043, or call (609) 429-5358.

  If you would like more information or clarification of the recommendations, please contact the undersigned.

  I will await your review and reply.

            Sincerely,

*∅ Oak-hee : I sent this to*
*Louis McAerba*



## Action for Boston
## Community Development
## Inc.  178 TREMONT STREET, BOSTON, MASSACHUSETTS 02111-1093
TELEPHONE: (617) 357-6000 TTY: (617) 423-9215 FAX: (617) 357-6041

Wellesley Housing Authority
109 Barton Road
Wellesley Hills, MA 02481

May 16, 2001

RE:   **Ms. Oak-Hee Ruesch**
      **315 Western Road, #A3**

Dear Sir or Madam:

I am writing on behalf of my client, Ms. Oak-Hee Ruesch. Ms. Ruesch is disabled and
has been diagnosed with Multiple Chemical Sensitivity, a disorder that causes her to
experience extreme environmental intolerances. This disorder requires Ms. Ruesch to
request the following accommodations in her housing:

1. The removal of all carpeted surfaces in her apartment;
2. Good ventilation in her apartment, such as is possible with two working windows
   providing cross-ventilation. If this is not possible, Ms. Ruesch would require an
   air purifier and humidifier;
3. No heating with forced air, as radiant heat is a healthier option for her;
4. Limiting pollution sources—specifically moving her to an apartment that is not
   facing a heavily trafficked roadway; and
5. Placing weather stripping on windows and doors to limit exposure to chemical
   products from neighbors and the surrounding area.

I have enclosed a letter from Doctor Susan Korrick, Ms. Ruesch's occupational and
environmental physician. I have also enclosed a prescription for an air purifier and
humidifier. Dr. Mariana Castells, Ms. Ruesch's allergy physician, signed this
prescription.

Additionally, Ms. Ruesch would like to request that her rent be recalculated, as her
current rental amount fails to take her special dietary concerns into account. I have
enclosed a letter from Dr. Castells that details Ms. Ruesch's dietary needs.

Please feel free to contact me if you would like to schedule an appointment to review this
matter. My telephone number is 617-357-6000, x. 457.

Sincerely,

Sarah Gunn
SHP Program Supervisor

Exibit 3

THELMA D. BURNS, *Chair;* JEANETTE BOONE, *Vice Chair;* REGINALD BROTHERS, *Vice Chair;* KATHLEEN FLYNN, *Vice Chair;*
NORMA W. GRAMER, *Vice Chair;* STANLEY N. WILLIAMS, *Vice Chair;*
JEAN M. BABCOCK, *Treasurer;* MARK V. NUCCIO, ESQ., *Clerk;* ROBERT M. COARD, *President/CEO*

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss

DISTRICT COURT DEPT.
OF THE TRIAL COURT
DEDHAM DIVISION
DOCKET NO: 0254SU0583

WELLESLEY HOUSING                )
AUTHORITY                        )
                                 )
        VS.                      )
                                 )
OAK HEE RUESCH                   )

FINDINGS ON ISSUE OF
DEFENDANT'S COMPETENCY
AND APPOINTMENT OF GUARDIAN
AD LITEM PURSUANT TO G.L. c. 201,
SECTION 34

This matter came before me on Plaintiff's complaint for Summary Process against the defendant, Oak Hee Ruesch, when Ms. Reusch filed a motion for a stay of execution after summary judgment was entered for the Plaintiff by Aloh, J. on July 19, 2002. At the hearing on the Motion for Stay on October 31, 2002, I observed Ms. Reusch, who has appeared before me in the past in connection with another summary judgment action, and had serious questions about her competency. Pursuant to G.L. c. 123, Section 19, I ordered an evaluation of her competency on an outpatient basis.

Dr. Frederick W. Kelso, a designated forensic psychologist assigned to the Court Clinic at this court, provided a comprehensive evaluation of Ms. Reusch's competency in a 44 page report dated December 5, 2002. Based on that report, lobby conferences at which both counsel for Ms. Reusch and for the Wellesley Housing Authority were present and at which the Probation Department of this court participated, and based on my own observations of Ms. Reusch in court in connection with this Motion for a Stay of Execution, I find that Ms. Reusch is not competent at this time. While she appears to possess a factual understanding of the proceedings, she does not appear to possess a rational understanding of the proceedings or of the issues before the court in this eviction matter.

Accordingly, in light of the serious issues at stake and pursuant to G.L. c. 201, Section 34, I hereby appoint Kevin F. Hampe, Esquire of Dedham, MA, as guardian ad litem/next friend to represent Ms. Reusch. Attorney Stephen Matthews from the South Middlesex Legal Services continues to represent Ms. Reusch in the instant action by the Wellesley Housing Authority, which matter is stayed pending Ms. Reusch being restored to competency.

The fee for Mr. Hampe's services as guardian ad litem shall be paid by the Commonwealth of Massachusetts. Mr Hampe is hereby chosen as he is known to this court as

-1-

an attorney who represents disabled individuals in both civil and criminal matters, his office is located in Dedham, which is important for purposes of giving Ms. Reusch access to him, and he has and remains on the list of available counsel for appointments by this court.

Further, it is ordered that Ms. Reusch must pay use and occupation charges in the amount of $118.00 per month to the Wellesley Housing Authority, and a representative payee must be obtained to handle Ms. Reusch's Social Security Disability payments and the issue of arrearages due to the Wellesley Housing Authority. This matter is set for a status hearing on February 14, 2003.

By the Court,

Lynda M. Connolly
Justice
December 6, 2002

GAL:Oak Hee Reusch/12/06/02